# COMPOSITE EXHIBIT "F"

CFN 20250208218
OR BK 35800 PG 1395
RECORDED 6/11/2025 10:53 AM
AMT: $1,125,500.00
DEED DOC $7,878.50
Palm Beach County, Florida
Joseph Abruzzo, Clerk
Pgs: 1395 - 1396; (2pgs)

Prepared by and return to:
Izabella Marino
Florida Title Advisors Inc
8409 N Military Trail, Ste 116
Palm Beach Gardens, FL 33410
(561) 314-0369

_____[Space Above This Line For Recording Data]_____

# Warranty Deed

**This Warranty Deed** made this **2nd day of June, 2025** between **Monna Estate Homes, LLC, a Florida Limited Liability Company** whose post office address is **8409 N Military Trail, Ste 115, Palm Beach Gardens, FL 33410**, grantor, and **Daniel Marty and Ana Marty, his wife** whose post office address is **17517 66th Court N, Loxahatchee, FL 33470**, grantee:

(Whenever used herein the terms "grantor" and "grantee" include all the parties to this instrument and the heirs, legal representatives, and assigns of individuals, and the successors and assigns of corporations, trusts and trustees)

**Witnesseth,** that said grantor, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable considerations to said grantor in hand paid by said grantee, the receipt whereof is hereby acknowledged, has granted, bargained, and sold to the said grantee, and grantee's heirs and assigns forever, the following described land, situated, lying and being in **Palm Beach County**, Florida to-wit:

> **Tract #L-239**
>
> **The West 246.34 feet of the East 2862 feet of the South 242.9 feet of the North 2013.2 feet of Section 35, Township 42 South, Range 40 East; subject to an easement to Indian Trail Water Control District for road and drainage purposes over the South 30 feet and the East 40 feet.**
>
> **All lying and being in Palm Beach County, Florida.**
>
> **Parcel Number: 00-40-42-35-00-000-1850**

**Together** with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

**To Have and to Hold,** the same in fee simple forever.

**And** the grantor hereby covenants with said grantee that the grantor is lawfully seized of said land in fee simple; that the grantor has good right and lawful authority to sell and convey said land; that the grantor hereby fully warrants the title to said land and will defend the same against the lawful claims of all persons whomsoever; and that said land is free of all encumbrances, except taxes accruing subsequent to .

**In Witness Whereof,** grantor has hereunto set grantor's hand and seal the day and year first above written.

NOT A CERTIFIED COPY

Signed, sealed and delivered in our presence:



Witness
Printed Name: Anthony Marini
P.O. Address
8409 N Military Trail
Ste 115
Palm Beach Gardens FL 33410

Witness
Printed Name: Kristine Leaf
P.O Box
8409 N Military Trail
Ste 115
Palm Beach Gardens FL 33410

Monna Estate Homes, LLC, a Florida Limited Liability
Company

By:_____
    Zamel Abou, Managing Member

.

State of Florida
County of Palm Beach

The foregoing instrument was acknowledged before me by means of [ ✓ ] physical presence or [ ] online notarization, this 2nd day of June, 2025 by Zamel Abou, Managing Member of Monna Estate Homes, LLC who [ ] is personally known or [ ✓ ] has produced a driver's license as identification.

[Seal]

KRISTINE LEAF
Notary Public - State of Florida
Commission # HH 675167
My Comm. Expires May 11, 2029
Bonded through National Notary Assn.

_____
Notary Public
Print Name: Kristine Leaf
My Commission Expires:_____

NOT A CERTIFIED COPY

File Number: 25-068

Warranty Deed – Page 2

CFN 20250208220
OR BK 35800 PG 1401
RECORDED 6/11/2025 10:53 AM
AMT$675,000.00
MTG DOC $2,362.50
Palm Beach County, Florida
Joseph Abruzzo, Clerk
Pgs: 1401 - 1417; (17pgs)

This Document Prepared By:
**NICHOLE PEARSON**
**PENNYMAC LOAN SERVICES, LLC**

**3043 TOWNSGATE ROAD, SUITE 200**
**WESTLAKE VILLAGE, CA 91361**
**(800) 777-4001**

After Recording Return To:
**DEUTSCHE BANK NATIONAL TRUST COMPANY**
ATTN: **TEAM PENNYMAC/RETAIL**
**1761 E. SAINT ANDREWS PLACE**

**SANTA ANA, CA 92705**

---

[Space Above This Line For Recording Data]

# MORTGAGE

**MARTY**
Loan #: **6191342510**
MIN: **100715970022184160**
MERS Phone: **1-888-679-6377**
PIN: **00-40-42-35-00-000-1850**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined under the caption TRANSFER OF RIGHTS IN THE PROPERTY and in Sections 3, 4, 10, 11, 12, 16, 19, 24, and 25. Certain rules regarding the usage of words used in this document are also provided in Section 17.

### Parties
**(A) "Borrower"** is **DANIEL MARTY AND ANA MARTY, HUSBAND AND WIFE,** currently residing at **2411 SOUTHWEST 29TH WAY, FORT LAUDERDALE, FL 33312 US.** Borrower is the mortgagor under this Security Instrument.
**(B) "Lender"** is **PENNYMAC LOAN SERVICES, LLC.** Lender is a **DELAWARE LIMITED LIABILITY COMPANY** organized and existing under the laws of **DELAWARE.** Lender's address is **3043 TOWNSGATE ROAD, SUITE 200, WESTLAKE VILLAGE, CA 91361.** The term "Lender" includes any successors and assigns of Lender.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

### Documents
**(D) "Note"** means the promissory note dated **JUNE 2, 2025,** and signed by each Borrower who is legally obligated for the debt under that promissory note, that is in either (i) paper form, using Borrower's written pen and ink signature, or (ii) electronic form, using Borrower's adopted Electronic Signature in accordance with the UETA or E-SIGN, as applicable. The Note evidences the legal obligation of each Borrower who signed the Note to pay Lender **SIX HUNDRED SEVENTY-FIVE THOUSAND AND 00/100** Dollars (U.S. **$675,000.00**) plus interest. Each Borrower who signed the Note has promised to pay this debt in regular monthly payments and to pay

**FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
EX 25288.11

**Form 3010** 07/2021
*Page 1 of 16*

6191342510

the debt in full not later than **JULY 1, 2055**.

**(E) "Riders"** means all Riders to this Security Instrument that are signed by Borrower. All such Riders are incorporated into and deemed to be a part of this Security Instrument. The following Riders are to be signed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider        ☐ Condominium Rider                  ☐ Other(s) [specify]
☐ 1-4 Family Rider             ☐ Planned Unit Development Rider     _____
☐ Second Home Rider

**(F) "Security Instrument"** means this document, which is dated **JUNE 2, 2025**, together with all Riders to this document.

**Additional Definitions**

**(G) "Applicable Law"** means all controlling applicable federal, state, and local statutes, regulations, ordinances, and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(H) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association, or similar organization.

**(I) "Default"** means: (i) the failure to pay any Periodic Payment or any other amount secured by this Security Instrument on the date it is due; (ii) a breach of any representation, warranty, covenant, obligation, or agreement in this Security Instrument; (iii) any materially false, misleading, or inaccurate information or statement to Lender provided by Borrower or any persons or entities acting at Borrower's direction or with Borrower's knowledge or consent, or failure to provide Lender with material information in connection with the Loan, as described in Section 8; or (iv) any action or proceeding described in Section 12(e).

**(J) "Electronic Fund Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone or other electronic device capable of communicating with such financial institution, wire transfers, and automated clearinghouse transfers.

**(K) "Electronic Signature"** means an "Electronic Signature" as defined in the UETA or E-SIGN, as applicable.

**(L) "E-SIGN"** means the Electronic Signatures in Global and National Commerce Act (15 U.S.C. § 7001 *et seq.*), as it may be amended from time to time, or any applicable additional or successor legislation that governs the same subject matter.

**(M) "Escrow Items"** means: (i) taxes and assessments and other items that can attain priority over this Security Instrument as a lien or encumbrance on the Property; (ii) leasehold payments or ground rents on the Property, if any; (iii) premiums for any and all insurance required by Lender under Section 5; (iv) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 11; and (v) Community Association Dues, Fees, and Assessments if Lender requires that they be escrowed beginning at Loan closing or at any time during the Loan term.

**(N) "Loan"** means the debt obligation evidenced by the Note, plus interest, any prepayment charges, costs, expenses, and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(O) "Loan Servicer"** means the entity that has the contractual right to receive Borrower's Periodic Payments and any other payments made by Borrower, and administers the Loan on behalf of Lender. Loan Servicer does not include a sub-servicer, which is an entity that may service the Loan on behalf of the Loan Servicer.

**(P) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

NOT A CERTIFIED COPY

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

25288.11

Form 3010   07/2021
*Page 2 of 16*

6191342510

**(Q) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or Default on, the Loan.

**(R) "Partial Payment"** means any payment by Borrower, other than a voluntary prepayment permitted under the Note, which is less than a full outstanding Periodic Payment.

**(S) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3.

**(T) "Property"** means the property described below under the heading "TRANSFER OF RIGHTS IN THE PROPERTY."

**(U) "Rents"** means all amounts received by or due Borrower in connection with the lease, use, and/or occupancy of the Property by a party other than Borrower.

**(V) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 *et seq.*) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they may be amended from time to time, or any additional or successor federal legislation or regulation that governs the same subject matter. When used in this Security Instrument, "RESPA" refers to all requirements and restrictions that would apply to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(W) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**(X) "UETA"** means the Uniform Electronic Transactions Act, as enacted by the jurisdiction in which the Property is located, as it may be amended from time to time, or any applicable additional or successor legislation that governs the same subject matter.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender (i) the repayment of the Loan, and all renewals, extensions, and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower mortgages, grants, and conveys to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the **COUNTY** of **PALM BEACH**:
**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".**
which currently has the address of **17517 66TH COURT NORTH, LOXAHATCHEE,** Florida **33470** ("Property Address");

TOGETHER WITH all the improvements now or subsequently erected on the property, including replacements and additions to the improvements on such property, all property rights, including, without limitation, all easements, appurtenances, royalties, mineral rights, oil or gas rights or profits, water rights, and fixtures now or subsequently a part of the property. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER REPRESENTS, WARRANTS, COVENANTS, AND AGREES that: (i) Borrower lawfully owns and possesses the Property conveyed in this Security Instrument in fee simple or lawfully has the right to use and occupy the Property under a leasehold estate; (ii) Borrower has the right to mortgage, grant, and convey the Property or Borrower's leasehold interest in the Property; and (iii) the Property is unencumbered, and not subject to any other ownership interest in the Property, except for encumbrances and ownership interests of record. Borrower warrants generally the title to the Property and covenants and agrees to defend the title to the Property against all claims and demands, subject to any encumbrances and ownership interests of record as of Loan closing.

THIS SECURITY INSTRUMENT combines uniform covenants for national use with limited variations

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
25288.11

Form 3010   07/2021
*Page 3 of 16*

6191342510

and non-uniform covenants that reflect specific Florida state requirements to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower will pay each Periodic Payment when due. Borrower will also pay any prepayment charges and late charges due under the Note, and any other amounts due under this Security Instrument. Payments due under the Note and this Security Instrument must be made in U.S. currency. If any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check, or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a U.S. federal agency, instrumentality, or entity; or (d) Electronic Fund Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 16. Lender may accept or return any Partial Payments in its sole discretion pursuant to Section 2.

Any offset or claim that Borrower may have now or in the future against Lender will not relieve Borrower from making the full amount of all payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Acceptance and Application of Payments or Proceeds.**

**(a) Acceptance and Application of Partial Payments.** Lender may accept and either apply or hold in suspense Partial Payments in its sole discretion in accordance with this Section 2. Lender is not obligated to accept any Partial Payments or to apply any Partial Payments at the time such payments are accepted, and also is not obligated to pay interest on such unapplied funds. Lender may hold such unapplied funds until Borrower makes payment sufficient to cover a full Periodic Payment, at which time the amount of the full Periodic Payment will be applied to the Loan. If Borrower does not make such a payment within a reasonable period of time, Lender will either apply such funds in accordance with this Section 2 or return them to Borrower. If not applied earlier, Partial Payments will be credited against the total amount due under the Loan in calculating the amount due in connection with any foreclosure proceeding, payoff request, loan modification, or reinstatement. Lender may accept any payment insufficient to bring the Loan current without waiver of any rights under this Security Instrument or prejudice to its rights to refuse such payments in the future.

**(b) Order of Application of Partial Payments and Periodic Payments.** Except as otherwise described in this Section 2, if Lender applies a payment, such payment will be applied to each Periodic Payment in the order in which it became due, beginning with the oldest outstanding Periodic Payment, as follows: first to interest and then to principal due under the Note, and finally to Escrow Items. If all outstanding Periodic Payments then due are paid in full, any payment amounts remaining may be applied to late charges and to any amounts then due under this Security Instrument. If all sums then due under the Note and this Security Instrument are paid in full, any remaining payment amount may be applied, in Lender's sole discretion, to a future Periodic Payment or to reduce the principal balance of the Note.

If Lender receives a payment from Borrower in the amount of one or more Periodic Payments and the amount of any late charge due for a delinquent Periodic Payment, the payment may be applied to the delinquent payment and the late charge.

When applying payments, Lender will apply such payments in accordance with Applicable Law.

**(c) Voluntary Prepayments.** Voluntary prepayments will be applied as described in the Note.

**(d) No Change to Payment Schedule.** Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.**

**(a) Escrow Requirement; Escrow Items.** Borrower must pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum of money to provide for payment of amounts due for all

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
25288.11

Form 3010   07/2021
*Page 4 of 16*

NOT A CERTIFIED COPY

CFN 20250208220
OR BK 35890 PG 1205
Pg: 5 of 17

6191342510

Escrow Items (the "Funds"). The amount of the Funds required to be paid each month may change during the term of the Loan. Borrower must promptly furnish to Lender all notices or invoices of amounts to be paid under this Section 3.

(b) **Payment of Funds; Waiver.** Borrower must pay Lender the Funds for Escrow Items unless Lender waives this obligation in writing. Lender may waive this obligation for any Escrow Item at any time. In the event of such waiver, Borrower must pay directly, when and where payable, the amounts due for any Escrow Items subject to the waiver. If Lender has waived the requirement to pay Lender the Funds for any or all Escrow Items, Lender may require Borrower to provide proof of direct payment of those items within such time period as Lender may require. Borrower's obligation to make such timely payments and to provide proof of payment is deemed to be a covenant and agreement of Borrower under this Security Instrument. If Borrower is obligated to pay Escrow Items directly pursuant to a waiver, and Borrower fails to pay timely the amount due for an Escrow Item, Lender may exercise its rights under Section 9 to pay such amount and Borrower will be obligated to repay to Lender any such amount in accordance with Section 9.

Lender may withdraw the waiver as to any or all Escrow Items at any time by giving a notice in accordance with Section 16; upon such withdrawal, Borrower must pay to Lender all Funds for such Escrow Items, and in such amounts, that are then required under this Section 3.

(c) **Amount of Funds; Application of Funds.** Lender may, at any time, collect and hold Funds in an amount up to, but not in excess of, the maximum amount a lender can require under RESPA. Lender will estimate the amount of Funds due in accordance with Applicable Law.

The Funds will be held in an institution whose deposits are insured by a U.S. federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender will apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender may not charge Borrower for: (i) holding and applying the Funds; (ii) annually analyzing the escrow account; or (iii) verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless Lender and Borrower agree in writing or Applicable Law requires interest to be paid on the Funds, Lender will not be required to pay Borrower any interest or earnings on the Funds. Lender will give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

(d) **Surplus; Shortage and Deficiency of Funds.** In accordance with RESPA, if there is a surplus of Funds held in escrow, Lender will account to Borrower for such surplus. If Borrower's Periodic Payment is delinquent by more than 30 days, Lender may retain the surplus in the escrow account for the payment of the Escrow Items. If there is a shortage or deficiency of Funds held in escrow, Lender will notify Borrower and Borrower will pay to Lender the amount necessary to make up the shortage or deficiency in accordance with RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender will promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower must pay (a) all taxes, assessments, charges, fines, and impositions attributable to the Property which have priority or may attain priority over this Security Instrument, (b) leasehold payments or ground rents on the Property, if any, and (c) Community Association Dues, Fees, and Assessments, if any. If any of these items are Escrow Items, Borrower will pay them in the manner provided in Section 3.

Borrower must promptly discharge any lien that has priority or may attain priority over this Security Instrument unless Borrower: (aa) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing under such agreement; (bb) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which Lender determines, in its sole discretion, operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (cc) secures from the holder of the lien an agreement satisfactory to Lender that subordinates the lien to this Security Instrument (collectively, the "Required Actions"). If Lender determines that any part of the Property is subject to a lien that has priority or may attain priority over this Security Instrument and Borrower has not taken any of the Required Actions in regard to such lien, Lender may give Borrower a notice identifying the lien. Within 10 days after the date on which that notice is given, Borrower must satisfy the lien or take one or more of the Required Actions.

**5. Property Insurance.**

FLORIDA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
☒☒   25288.11

6191342510

**(a) Insurance Requirement; Coverages.** Borrower must keep the improvements now existing or subsequently erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes, winds, and floods, for which Lender requires insurance. Borrower must maintain the types of insurance Lender requires in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan, and may exceed any minimum coverage required by Applicable Law. Borrower may choose the insurance carrier providing the insurance, subject to Lender's right to disapprove Borrower's choice, which right will not be exercised unreasonably.

**(b) Failure to Maintain Insurance.** If Lender has a reasonable basis to believe that Borrower has failed to maintain any of the required insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and at Borrower's expense. Unless required by Applicable Law, Lender is under no obligation to advance premiums for, or to seek to reinstate, any prior lapsed coverage obtained by Borrower. Lender is under no obligation to purchase any particular type or amount of coverage and may select the provider of such insurance in its sole discretion. Before purchasing such coverage, Lender will notify Borrower if required to do so under Applicable Law. Any such coverage will insure Lender, but might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard, or liability and might provide greater or lesser coverage than was previously in effect, but not exceeding the coverage required under Section 5(a). Borrower acknowledges that the cost of the insurance coverage so obtained may significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender for costs associated with reinstating Borrower's insurance policy or with placing new insurance under this Section 5 will become additional debt of Borrower secured by this Security Instrument. These amounts will bear interest at the Note rate from the date of disbursement and will be payable, with such interest, upon notice from Lender to Borrower requesting payment.

**(c) Insurance Policies.** All insurance policies required by Lender and renewals of such policies: (i) will be subject to Lender's right to disapprove such policies; (ii) must include a standard mortgage clause; and (iii) must name Lender as mortgagee and/or as an additional loss payee. Lender will have the right to hold the policies and renewal certificates. If Lender requires, Borrower will promptly give to Lender proof of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy must include a standard mortgage clause and must name Lender as mortgagee and/or as an additional loss payee.

**(d) Proof of Loss; Application of Proceeds.** In the event of loss, Borrower must give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Any insurance proceeds, whether or not the underlying insurance was required by Lender, will be applied to restoration or repair of the Property, if Lender deems the restoration or repair to be economically feasible and determines that Lender's security will not be lessened by such restoration or repair.

If the Property is to be repaired or restored, Lender will disburse from the insurance proceeds any initial amounts that are necessary to begin the repair or restoration, subject to any restrictions applicable to Lender. During the subsequent repair and restoration period, Lender will have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction (which may include satisfying Lender's minimum eligibility requirements for persons repairing the Property, including, but not limited to, licensing, bond, and insurance requirements) provided that such inspection must be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed, depending on the size of the repair or restoration, the terms of the repair agreement, and whether Borrower is in Default on the Loan. Lender may make such disbursements directly to Borrower, to the person repairing or restoring the Property, or payable jointly to both. Lender will not be required to pay Borrower any interest or earnings on such insurance proceeds unless Lender and Borrower agree in writing or Applicable Law requires otherwise. Fees for public adjusters, or other third parties, retained by Borrower will not be paid out of the insurance proceeds and will be the sole obligation of Borrower.

If Lender deems the restoration or repair not to be economically feasible or Lender's security would be lessened by such restoration or repair, the insurance proceeds will be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds will be applied in the order that Partial Payments are applied in Section 2(b).

NOT A CERTIFIED COPY

6191342510

**(e) Insurance Settlements; Assignment of Proceeds.** If Borrower abandons the Property, Lender may file, negotiate, and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 26 or otherwise, Borrower is unconditionally assigning to Lender (i) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note and this Security Instrument, and (ii) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, to the extent that such rights are applicable to the coverage of the Property. If Lender files, negotiates, or settles a claim, Borrower agrees that any insurance proceeds may be made payable directly to Lender without the need to include Borrower as an additional loss payee. Lender may use the insurance proceeds either to repair or restore the Property (as provided in Section 5(d)) or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower must occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and must continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent will not be unreasonably withheld, or unless extenuating circumstances exist that are beyond Borrower's control.

**7. Preservation, Maintenance, and Protection of the Property; Inspections.** Borrower will not destroy, damage, or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower must maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless Lender determines pursuant to Section 5 that repair or restoration is not economically feasible, Borrower will promptly repair the Property if damaged to avoid further deterioration or damage.

If insurance or condemnation proceeds are paid to Lender in connection with damage to, or the taking of, the Property, Borrower will be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed, depending on the size of the repair or restoration, the terms of the repair agreement, and whether Borrower is in Default on the Loan. Lender may make such disbursements directly to Borrower, to the person repairing or restoring the Property, or payable jointly to both. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower remains obligated to complete such repair or restoration.

Lender may make reasonable entries upon and inspections of the Property. If Lender has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender will give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower will be in Default if, during the Loan application process, Borrower or any persons or entities acting at Borrower's direction or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan, including, but not limited to, overstating Borrower's income or assets, understating or failing to provide documentation of Borrower's debt obligations and liabilities, and misrepresenting Borrower's occupancy or intended occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**

**(a) Protection of Lender's Interest.** If: (i) Borrower fails to perform the covenants and agreements contained in this Security Instrument; (ii) there is a legal proceeding or government order that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien that has priority or may attain priority over this Security Instrument, or to enforce laws or regulations); or (iii) Lender reasonably believes that Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and/or rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions may include, but are not limited to: (I) paying any sums secured by a lien that has priority or may attain priority over this Security Instrument; (II) appearing in court; and (III) paying: (A) reasonable attorneys' fees and costs; (B) property inspection

**FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
25288.11

Form 3010   07/2021
*Page 7 of 16*

6191342510

and valuation fees; and (C) other fees incurred for the purpose of protecting Lender's interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, exterior and interior inspections of the Property, entering the Property to make repairs, changing locks, replacing or boarding up doors and windows, draining water from pipes, eliminating building or other code violations or dangerous conditions, and having utilities turned on or off. Although Lender may take action under this Section 9, Lender is not required to do so and is not under any duty or obligation to do so. Lender will not be liable for not taking any or all actions authorized under this Section 9.

**(b) Avoiding Foreclosure; Mitigating Losses.** If Borrower is in Default, Lender may work with Borrower to avoid foreclosure and/or mitigate Lender's potential losses, but is not obligated to do so unless required by Applicable Law. Lender may take reasonable actions to evaluate Borrower for available alternatives to foreclosure, including, but not limited to, obtaining credit reports, title reports, title insurance, property valuations, subordination agreements, and third-party approvals. Borrower authorizes and consents to these actions. Any costs associated with such loss mitigation activities may be paid by Lender and recovered from Borrower as described below in Section 9(c), unless prohibited by Applicable Law.

**(c) Additional Amounts Secured.** Any amounts disbursed by Lender under this Section 9 will become additional debt of Borrower secured by this Security Instrument. These amounts may bear interest at the Note rate from the date of disbursement and will be payable, with such interest, upon notice from Lender to Borrower requesting payment.

**(d) Leasehold Terms.** If this Security Instrument is on a leasehold, Borrower will comply with all the provisions of the lease. Borrower will not surrender the leasehold estate and interests conveyed or terminate or cancel the ground lease. Borrower will not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title will not merge unless Lender agrees to the merger in writing.

**10. Assignment of Rents.**

**(a) Assignment of Rents.** If the Property is leased to, used by, or occupied by a third party ("Tenant"), Borrower is unconditionally assigning and transferring to Lender any Rents, regardless of to whom the Rents are payable. Borrower authorizes Lender to collect the Rents, and agrees that each Tenant will pay the Rents to Lender. However, Borrower will receive the Rents until (i) Lender has given Borrower notice of Default pursuant to Section 26, and (ii) Lender has given notice to the Tenant that the Rents are to be paid to Lender. This Section 10 constitutes an absolute assignment and not an assignment for additional security only.

**(b) Notice of Default.** If Lender gives notice of Default to Borrower: (i) all Rents received by Borrower must be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender will be entitled to collect and receive all of the Rents; (iii) Borrower agrees to instruct each Tenant that Tenant is to pay all Rents due and unpaid to Lender upon Lender's written demand to the Tenant; (iv) Borrower will ensure that each Tenant pays all Rents due to Lender and will take whatever action is necessary to collect such Rents if not paid to Lender; (v) unless Applicable Law provides otherwise, all Rents collected by Lender will be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, reasonable attorneys' fees and costs, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments, and other charges on the Property, and then to any other sums secured by this Security Instrument; (vi) Lender, or any judicially appointed receiver, will be liable to account for only those Rents actually received; and (vii) Lender will be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

**(c) Funds Paid by Lender.** If the Rents are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents, any funds paid by Lender for such purposes will become indebtedness of Borrower to Lender secured by this Security Instrument pursuant to Section 9.

**(d) Limitation on Collection of Rents.** Borrower may not collect any of the Rents more than one month in advance of the time when the Rents become due, except for security or similar deposits.

**(e) No Other Assignment of Rents.** Borrower represents, warrants, covenants, and agrees that Borrower has not signed any prior assignment of the Rents, will not make any further assignment of the Rents, and has not performed, and will not perform, any act that could prevent Lender from exercising its rights under this Security

CFN 20250208220
OR BK 35800 PG 4 20
Pg: 9 of 17

6191342510

Instrument.

(f) **Control and Maintenance of the Property.** Unless required by Applicable Law, Lender, or a receiver appointed under Applicable Law, is not obligated to enter upon, take control of, or maintain the Property before or after giving notice of Default to Borrower. However, Lender, or a receiver appointed under Applicable Law, may do so at any time when Borrower is in Default, subject to Applicable Law.

(g) **Additional Provisions.** Any application of the Rents will not cure or waive any Default or invalidate any other right or remedy of Lender. This Section 10 does not relieve Borrower of Borrower's obligations under Section 6.

This Section 10 will terminate when all the sums secured by this Security Instrument are paid in full.

**11. Mortgage Insurance.**

(a) **Payment of Premiums; Substitution of Policy; Loss Reserve; Protection of Lender.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower will pay the premiums required to maintain the Mortgage Insurance in effect. If Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, and (i) the Mortgage Insurance coverage required by Lender ceases for any reason to be available from the mortgage insurer that previously provided such insurance, or (ii) Lender determines in its sole discretion that such mortgage insurer is no longer eligible to provide the Mortgage Insurance coverage required by Lender, Borrower will pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Borrower will continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use, and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve will be non-refundable, even when the Loan is paid in full, and Lender will not be required to pay Borrower any interest or earnings on such loss reserve.

Lender will no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower will pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 11 affects Borrower's obligation to pay interest at the Note rate.

(b) **Mortgage Insurance Agreements.** Mortgage Insurance reimburses Lender for certain losses Lender may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy or coverage.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. Any such agreements will not: (i) affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan; (ii) increase the amount Borrower will owe for Mortgage Insurance; (iii) entitle Borrower to any refund; or (iv) affect the rights Borrower has, if any, with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 (12 U.S.C. § 4901 *et seq.*), as it may be amended from time to time, or any additional or successor federal legislation or regulation that governs the same subject matter ("HPA"). These rights under the HPA may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3010   07/2021
25288.11                                                                                              *Page 9 of 16*

6191342510

termination.

**12. Assignment and Application of Miscellaneous Proceeds; Forfeiture.**

**(a) Assignment of Miscellaneous Proceeds.** Borrower is unconditionally assigning the right to receive all Miscellaneous Proceeds to Lender and agrees that such amounts will be paid to Lender.

**(b) Application of Miscellaneous Proceeds upon Damage to Property.** If the Property is damaged, any Miscellaneous Proceeds will be applied to restoration or repair of the Property, if Lender deems the restoration or repair to be economically feasible and Lender's security will not be lessened by such restoration or repair. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to ensure the work has been completed to Lender's satisfaction (which may include satisfying Lender's minimum eligibility requirements for persons repairing the Property, including, but not limited to, licensing, bond, and insurance requirements) provided that such inspection must be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed, depending on the size of the repair or restoration, the terms of the repair agreement, and whether Borrower is in Default on the Loan. Lender may make such disbursements directly to Borrower, to the person repairing or restoring the Property, or payable jointly to both. Unless Lender and Borrower agree in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If Lender deems the restoration or repair not to be economically feasible or Lender's security would be lessened by such restoration or repair, the Miscellaneous Proceeds will be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds will be applied in the order that Partial Payments are applied in Section 2(b).

**(c) Application of Miscellaneous Proceeds upon Condemnation, Destruction, or Loss in Value of the Property.** In the event of a total taking, destruction, or loss in value of the Property, all of the Miscellaneous Proceeds will be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property (each, a "Partial Devaluation") where the fair market value of the Property immediately before the Partial Devaluation is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the Partial Devaluation, a percentage of the Miscellaneous Proceeds will be applied to the sums secured by this Security Instrument unless Borrower and Lender otherwise agree in writing. The amount of the Miscellaneous Proceeds that will be so applied is determined by multiplying the total amount of the Miscellaneous Proceeds by a percentage calculated by taking (i) the total amount of the sums secured immediately before the Partial Devaluation, and dividing it by (ii) the fair market value of the Property immediately before the Partial Devaluation. Any balance of the Miscellaneous Proceeds will be paid to Borrower.

In the event of a Partial Devaluation where the fair market value of the Property immediately before the Partial Devaluation is less than the amount of the sums secured immediately before the Partial Devaluation, all of the Miscellaneous Proceeds will be applied to the sums secured by this Security Instrument, whether or not the sums are then due, unless Borrower and Lender otherwise agree in writing.

**(d) Settlement of Claims.** Lender is authorized to collect and apply the Miscellaneous Proceeds either to the sums secured by this Security Instrument, whether or not then due, or to restoration or repair of the Property, if Borrower (i) abandons the Property, or (ii) fails to respond to Lender within 30 days after the date Lender notifies Borrower that the Opposing Party (as defined in the next sentence) offers to settle a claim for damages. "Opposing Party" means the third party that owes Borrower the Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to the Miscellaneous Proceeds.

**(e) Proceeding Affecting Lender's Interest in the Property.** Borrower will be in Default if any action or proceeding begins, whether civil or criminal, that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a Default and, if acceleration has occurred, reinstate as provided in Section 20, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower is unconditionally assigning to Lender the proceeds of any award or claim for damages that are attributable to the

FLORIDA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                          Form 3010    07/2021
☒ 25288.11                                                                                            *Page 10 of 16*

6191342510

impairment of Lender's interest in the Property, which proceeds will be paid to Lender. All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order that Partial Payments are applied in Section 2(b).

**13. Borrower Not Released; Forbearance by Lender Not a Waiver.** Borrower or any Successor in Interest of Borrower will not be released from liability under this Security Instrument if Lender extends the time for payment or modifies the amortization of the sums secured by this Security Instrument. Lender will not be required to commence proceedings against any Successor in Interest of Borrower, or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument, by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities, or Successors in Interest of Borrower or in amounts less than the amount then due, will not be a waiver of, or preclude the exercise of, any right or remedy by Lender.

**14. Joint and Several Liability; Signatories; Successors and Assigns Bound.** Borrower's obligations and liability under this Security Instrument will be joint and several. However, any Borrower who signs this Security Instrument but does not sign the Note: (a) signs this Security Instrument to mortgage, grant, and convey such Borrower's interest in the Property under the terms of this Security Instrument; (b) signs this Security Instrument to waive any applicable inchoate rights such as dower and curtesy and any available homestead exemptions; (c) signs this Security Instrument to assign any Miscellaneous Proceeds, Rents, or other earnings from the Property to Lender; (d) is not personally obligated to pay the sums due under the Note or this Security Instrument; and (e) agrees that Lender and any other Borrower can agree to extend, modify, forbear, or make any accommodations with regard to the terms of the Note or this Security Instrument without such Borrower's consent and without affecting such Borrower's obligations under this Security Instrument.

Subject to the provisions of Section 19, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, will obtain all of Borrower's rights, obligations, and benefits under this Security Instrument. Borrower will not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing.

**15. Loan Charges.**

**(a) Tax and Flood Determination Fees.** Lender may require Borrower to pay (i) a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan, and (ii) either (A) a one-time charge for flood zone determination, certification, and tracking services, or (B) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur that reasonably might affect such determination or certification. Borrower will also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency, or any successor agency, at any time during the Loan term, in connection with any flood zone determinations.

**(b) Default Charges.** If permitted under Applicable Law, Lender may charge Borrower fees for services performed in connection with Borrower's Default to protect Lender's interest in the Property and rights under this Security Instrument, including: (i) reasonable attorneys' fees and costs; (ii) property inspection, valuation, mediation, and loss mitigation fees; and (iii) other related fees.

**(c) Permissibility of Fees.** In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower should not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

**(d) Savings Clause.** If Applicable Law sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then (i) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). To the extent permitted by Applicable Law, Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**16. Notices; Borrower's Physical Address.** All notices given by Borrower or Lender in connection with

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
☒☒   25288.11

Form 3010   07/2021
*Page 11 of 16*

NOT A CERTIFIED COPY

6191342510

this Security Instrument must be in writing.

(a) **Notices to Borrower.** Unless Applicable Law requires a different method, any written notice to Borrower in connection with this Security Instrument will be deemed to have been given to Borrower when (i) mailed by first class mail, or (ii) actually delivered to Borrower's Notice Address (as defined in Section 16(c) below) if sent by means other than first class mail or Electronic Communication (as defined in Section 16(b) below). Notice to any one Borrower will constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. If any notice to Borrower required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

(b) **Electronic Notice to Borrower.** Unless another delivery method is required by Applicable Law, Lender may provide notice to Borrower by e-mail or other electronic communication ("Electronic Communication") if: (i) agreed to by Lender and Borrower in writing; (ii) Borrower has provided Lender with Borrower's e-mail or other electronic address ("Electronic Address"); (iii) Lender provides Borrower with the option to receive notices by first class mail or by other non-Electronic Communication instead of by Electronic Communication; and (iv) Lender otherwise complies with Applicable Law. Any notice to Borrower sent by Electronic Communication in connection with this Security Instrument will be deemed to have been given to Borrower when sent unless Lender becomes aware that such notice is not delivered. If Lender becomes aware that any notice sent by Electronic Communication is not delivered, Lender will resend such communication to Borrower by first class mail or by other non-Electronic Communication. Borrower may withdraw the agreement to receive Electronic Communications from Lender at any time by providing written notice to Lender of Borrower's withdrawal of such agreement.

(c) **Borrower's Notice Address.** The address to which Lender will send Borrower notice ("Notice Address") will be the Property Address unless Borrower has designated a different address by written notice to Lender. If Lender and Borrower have agreed that notice may be given by Electronic Communication, then Borrower may designate an Electronic Address as Notice Address. Borrower will promptly notify Lender of Borrower's change of Notice Address, including any changes to Borrower's Electronic Address if designated as Notice Address. If Lender specifies a procedure for reporting Borrower's change of Notice Address, then Borrower will report a change of Notice Address only through that specified procedure.

(d) **Notices to Lender.** Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated in this Security Instrument unless Lender has designated another address (including an Electronic Address) by notice to Borrower. Any notice in connection with this Security Instrument will be deemed to have been given to Lender only when actually received by Lender at Lender's designated address (which may include an Electronic Address). If any notice to Lender required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

(e) **Borrower's Physical Address.** In addition to the designated Notice Address, Borrower will provide Lender with the address where Borrower physically resides, if different from the Property Address, and notify Lender whenever this address changes.

**17. Governing Law; Severability; Rules of Construction.** This Security Instrument is governed by federal law and the law of the State of Florida. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. If any provision of this Security Instrument or the Note conflicts with Applicable Law (i) such conflict will not affect other provisions of this Security Instrument or the Note that can be given effect without the conflicting provision, and (ii) such conflicting provision, to the extent possible, will be considered modified to comply with Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence should not be construed as a prohibition against agreement by contract. Any action required under this Security Instrument to be made in accordance with Applicable Law is to be made in accordance with the Applicable Law in effect at the time the action is undertaken.

As used in this Security Instrument: (a) words in the singular will mean and include the plural and vice versa; (b) the word "may" gives sole discretion without any obligation to take any action; (c) any reference to "Section" in this document refers to Sections contained in this Security Instrument unless otherwise noted; and (d) the headings and captions are inserted for convenience of reference and do not define, limit, or describe the scope or intent of this Security Instrument or any particular Section, paragraph, or provision.

**18. Borrower's Copy.** One Borrower will be given one copy of the Note and of this Security Instrument.

FLORIDA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
25288.11

Form 3010   07/2021
*Page 12 of 16*

CFN 20250208220
OR BK 35800 PG 120
Pg: 13 of 17

6191342510

**19. Transfer of the Property or a Beneficial Interest in Borrower.** For purposes of this Section 19 only, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract, or escrow agreement, the intent of which is the transfer of title by Borrower to a purchaser at a future date.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, Lender will not exercise this option if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender will give Borrower notice of acceleration. The notice will provide a period of not less than 30 days from the date the notice is given in accordance with Section 16 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to, or upon, the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower and will be entitled to collect all expenses incurred in pursuing such remedies, including, but not limited to: (a) reasonable attorneys' fees and costs; (b) property inspection and valuation fees; and (c) other fees incurred to protect Lender's Interest in the Property and/or rights under this Security Instrument.

**20. Borrower's Right to Reinstate the Loan after Acceleration.** If Borrower meets certain conditions, Borrower will have the right to reinstate the Loan and have enforcement of this Security Instrument discontinued at any time up to the earliest of (a) five days before any foreclosure sale of the Property, or (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate. This right to reinstate will not apply in the case of acceleration under Section 19.

To reinstate the Loan, Borrower must satisfy all of the following conditions: (aa) pay Lender all sums that then would be due under this Security Instrument and the Note as if no acceleration had occurred; (bb) cure any Default of any other covenants or agreements under this Security Instrument or the Note; (cc) pay all expenses incurred in enforcing this Security Instrument or the Note, including, but not limited to: (i) reasonable attorneys' fees and costs; (ii) property inspection and valuation fees; and (iii) other fees incurred to protect Lender's interest in the Property and/or rights under this Security Instrument or the Note; and (dd) take such action as Lender may reasonably require to assure that Lender's interest in the Property and/or rights under this Security Instrument or the Note, and Borrower's obligation to pay the sums secured by this Security Instrument or the Note, will continue unchanged.

Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (aaa) cash; (bbb) money order; (ccc) certified check, bank check, treasurer's check, or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a U.S. federal agency, instrumentality, or entity; or (ddd) Electronic Fund Transfer. Upon Borrower's reinstatement of the Loan, this Security Instrument and obligations secured by this Security Instrument will remain fully effective as if no acceleration had occurred.

**21. Sale of Note.** The Note or a partial interest in the Note, together with this Security Instrument, may be sold or otherwise transferred one or more times. Upon such a sale or other transfer, all of Lender's rights and obligations under this Security Instrument will convey to Lender's successors and assigns.

**22. Loan Servicer.** Lender may take any action permitted under this Security Instrument through the Loan Servicer or another authorized representative, such as a sub-servicer. Borrower understands that the Loan Servicer or other authorized representative of Lender has the right and authority to take any such action.

The Loan Servicer may change one or more times during the term of the Note. The Loan Servicer may or may not be the holder of the Note. The Loan Servicer has the right and authority to: (a) collect Periodic Payments and any other amounts due under the Note and this Security Instrument; (b) perform any other mortgage loan servicing obligations; and (c) exercise any rights under the Note, this Security Instrument, and Applicable Law on behalf of Lender. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made, and any other information RESPA requires in connection with a notice of transfer of servicing.

**23. Notice of Grievance.** Until Borrower or Lender has notified the other party (in accordance with Section 16) of an alleged breach and afforded the other party a reasonable period after the giving of such notice to take

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
25288.11

Form 3010   07/2021
*Page 13 of 16*

CFN 20250208220
OR BK 35800 PG 120
Pg: 14 of 17

6191342510

corrective action, neither Borrower nor Lender may commence, join, or be joined to any judicial action (either as an individual litigant or a member of a class) that (a) arises from the other party's actions pursuant to this Security Instrument or the Note, or (b) alleges that the other party has breached any provision of this Security Instrument or the Note. If Applicable Law provides a time period that must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this Section 23. The notice of Default given to Borrower pursuant to Section 26(a) and the notice of acceleration given to Borrower pursuant to Section 19 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 23.

**24. Hazardous Substances.**

**(a) Definitions.** As used in this Section 24: (i) "Environmental Law" means any Applicable Laws where the Property is located that relate to health, safety, or environmental protection; (ii) "Hazardous Substances" include (A) those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law, and (B) the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, corrosive materials or agents, and radioactive materials; (iii) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (iv) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

**(b) Restrictions on Use of Hazardous Substances.** Borrower will not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower will not do, nor allow anyone else to do, anything affecting the Property that: (i) violates Environmental Law; (ii) creates an Environmental Condition; or (iii) due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects or could adversely affect the value of the Property. The preceding two sentences will not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

**(c) Notices; Remedial Actions.** Borrower will promptly give Lender written notice of: (i) any investigation, claim, demand, lawsuit, or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge; (ii) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release, or threat of release of any Hazardous Substance; and (iii) any condition caused by the presence, use, or release of a Hazardous Substance that adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower will promptly take all necessary remedial actions in accordance with Environmental Law. Nothing in this Security Instrument will create any obligation on Lender for an Environmental Cleanup.

**25. Electronic Note Signed with Borrower's Electronic Signature.** If the Note evidencing the debt for this Loan is electronic, Borrower acknowledges and represents to Lender that Borrower: (a) expressly consented and intended to sign the electronic Note using an Electronic Signature adopted by Borrower ("Borrower's Electronic Signature") instead of signing a paper Note with Borrower's written pen and ink signature; (b) did not withdraw Borrower's express consent to sign the electronic Note using Borrower's Electronic Signature; (c) understood that by signing the electronic Note using Borrower's Electronic Signature, Borrower promised to pay the debt evidenced by the electronic Note in accordance with its terms; and (d) signed the electronic Note with Borrower's Electronic Signature with the intent and understanding that by doing so, Borrower promised to pay the debt evidenced by the electronic Note in accordance with its terms.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**26. Acceleration; Remedies.**

**(a) Notice of Default.** Lender will give a notice of Default to Borrower prior to acceleration following Borrower's Default, except that such notice of Default will not be sent when Lender exercises its right under Section 19 unless Applicable Law provides otherwise. The notice will specify, in addition to any other information required by Applicable Law: (i) the Default; (ii) the action required to cure the Default; (iii) a date, not less than 30 days (or

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
25288.11

Form 3010   07/2021
*Page 14 of 16*

6191342510

as otherwise specified by Applicable Law) from the date the notice is given to Borrower, by which the Default must be cured; (iv) that failure to cure the Default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property; (v) Borrower's right to reinstate after acceleration; and (vi) Borrower's right to deny in the foreclosure proceeding the existence of a Default or to assert any other defense of Borrower to acceleration and foreclosure.

**(b) Acceleration; Foreclosure; Expenses.** If the Default is not cured on or before the date specified in the notice, Lender may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender will be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 26, including, but not limited to: (i) reasonable attorneys' fees and costs; (ii) property inspection and valuation fees; and (iii) other fees incurred to protect Lender's interest in the Property and/or rights under this Security Instrument.

**27. Release.** Upon payment of all sums secured by this Security Instrument, Lender will release this Security Instrument. Borrower will pay any recordation costs associated with such release. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**28. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees will include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**29. Jury Trial Waiver.** The Borrower waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider signed by Borrower and recorded with it.

_____  6-2-25
- BORROWER - DANIEL MARTY - DATE -
POST OFFICE ADDRESS: 2411 SOUTHWEST 29TH WAY, FORT LAUDERDALE, FL 33312 US

_____  6-2-25
- BORROWER - ANA MARTY - DATE -
POST OFFICE ADDRESS: 2411 SOUTHWEST 29TH WAY, FORT LAUDERDALE, FL 33312 US

Signed, sealed and delivered in the presence of:

_____          _____
Name: Anthony Marino                      Name: Kristine Leaf
POST OFFICE ADDRESS:                      POST OFFICE ADDRESS:
8409 N Military Trail                     8409 N Military Trail, 116
116                                       Palm Beach Gardens FL
Palm Beach Gardens FL 33410                                     33410

NOT A CERTIFIED COPY

**FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
25288.11

Form 3010   07/2021
*Page 15 of 16*

6191342510

[Space Below This Line for Acknowledgment]

State of **FLORIDA**

County of _Palm Beach_

The foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization, this _June 2nd 2025_ , by

_Daniel Marley and Ana Marley_ ,

who is personally known to me or who has produced _Drivers License_ as identification.

KRISTINE LEAF
Notary Public · State of Florida
Commission # HH 675167
My Comm. Expires May 11, 2029
Bonded through National Notary Assn.

Notary Public _Kristine Leaf_

My Commission Expires: _____

Individual Loan Originator: **ANTHONY MARINO**, NMLSR ID: **275183**
Loan Originator Organization: **MY LIBERTY LOANS**, NMLSR ID: **275236**
Loan Originator Organization (Creditor): **PENNYMAC LOAN SERVICES, LLC**, NMLSR ID: **35953**

NOT A CERTIFIED COPY

**FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
25288.11

Form 3010   07/2021
*Page 16 of 16*

## Exhibit A - Property Description

**Closing Date: June 2, 2025**

**Borrower(s): Daniel Marty and Ana Marty**

**Property Address:   17517 66th Court N, Loxahatchee, FL 33470**

Tract #L-239

The West 246.34 feet of the East 2862 feet of the South 242.9 feet of the North 2013.2 feet of Section 35, Township 42 South, Range 40 East; subject to an easement to Indian Trail Water Control District for road and drainage purposes over the South 30 feet and the East 40 feet.

All lying and being in Palm Beach County, Florida.

NOT A CERTIFIED COPY